UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AARON ADAMS,

               Plaintiff,

        v.

STEPHANIE INGRAM, LISA KREBS and
DR. VENERIO M. SANTOS,

               Defendants.

Case No. 12-cv-162-JPG-SCW

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motions for summary judgment filed by defendants Dr. Venerio M. Santos and Stephanie Ingram (Doc. 66) and by defendant Lisa Krebs (Doc. 71).   Plaintiff Aaron Adams has responded to the motions with a single response (Doc. 86).

**I.      Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).   The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial.   *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).   Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways.   It may present

evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B).   *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169.   Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.   *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168.   A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## II.   Facts

Viewed in the light most favorable to Adams, the evidence establishes the following relevant facts.[1]

---

[1]      In his response, Adams refers to several occurrences that he attempted to add to this case in a Second Amended Complaint, which the Court refused to allow him to file.   Those occurrences were not within the scope of Adams' First Amended Complaint (Doc. 6), the operative pleading in this case, which contains allegations of wrongdoing through May 2010.   The Court has not included later occurrences in its recitation of the facts as they are beyond the scope of this litigation.

At all relevant times, Adams was an inmate at Centralia Correctional Center ("Centralia"). On March 2, 2010, Adams injured his left ankle area while playing basketball at the prison.   He made an emergency visit to the health care unit ("HCU") where he was seen by Ingram, a registered nurse.   Adams complained of pain to his heel and lower calf when he walked.   Ingram examined Adams' ankle area and noted moderate swelling to his lower calf and heel and pain when she touched those areas.   She formed the impression that Adams had twisted and sprained his ankle.   In reality, he had injured his Achilles tendon.   Ingram provided treatment appropriate for a sprained ankle – instructions to elevate the ankle, an ice pack, an Ace bandage and ibuprofen – and wrote in Adams' medical records that he was to return to the HCU in 72 hours for a follow-up visit.   She did not refer him to a doctor as he requested.   Two days later, Dr. Santos reviewed Ingram's injury report and concluded that he needed to see Adams only as needed.

Adams returned to the HCU on March 5, 2010.   Ingram examined him, although the notes in his medical record were recorded by Nurse Jones.   Adams complained of pain in the back of his lower calf area.   Ingram observed mild swelling to the inner ankle, purple discoloration, but good range of motion.   Ingram still believed Adams was suffering from a sprained ankle.   She continued Adams' treatment of ibuprofen, an Ace bandage and elevation and noted in his medical records that he should to return to the HCU in 72 hours for a follow-up visit.   Adams insisted his injury was more severe than a sprained ankle and asked to see a doctor, but Ingram again refused to refer him to a doctor, telling him his ankle sprain was a minor injury that did not require a doctor's attention.

When Adams returned to the HCU on March 8, 2010, he again saw Ingram.   Adams complained that his ankle and lower calf area still hurt a little although the pain was not as

excruciating as it had been.   Ingram examined Adams and observed there was no swelling of the

ankle and that Adams was not wearing the Ace bandage, although he complained of pain with

movement and of trouble walking.   Ingram still believed Adams was suffering from a sprained

ankle.   Again, she ordered him to continue with ibuprofen and the Ace bandage and wrote in his

medical records that he should return to the HCU as needed.   Adams again asked to see a doctor,

but Ingram refused to refer him.

On April 9, 2010, Adams was taken to the HCU to return the Ace bandage he had been

given.   There, he saw Nurse Schukar who examined his ankle, observed swelling, and referred

him for a doctor visit in light of the fact that his ankle was still swollen so long after the initial

injury.   She also told him to continue using the Ace bandage.

On April 12, 2010, Dr. Santos saw Adams, examined him and diagnosed him correctly

with a ruptured Achilles tendon.   He referred him to an orthopedic specialist, Dr. Ramon, for the

first available appointment.   Dr. Ramon saw Adams on April 22, 2010, and surgically repaired his

Achilles injury the following day.   Because the ruptured Achilles tendon was not treated and/or

repaired immediately after it occurred, the surgery was more complicated than it otherwise might

have been, and Adams has suffered some permanent damage.

Following his surgery, Adams filed several grievances over his treatment prior to the

surgery and his inability to get his medical records.   Krebs, the HCU administrator, conveyed to

Adams' counselor information about how Adams should go about obtaining his medical records,

which the counselor included in the grievance response.

On February 24, 2012, after his release from prison[2], Adams filed this lawsuit alleging

Ingram, Dr. Santos and Krebs were deliberately indifferent to his serious medical needs in

---

[2]        Adams has since be reincarcerated and is now housed at Lincoln Correctional Center.

violation of the Eighth Amendment prohibition on cruel and unusual punishment.   He believes Ingram misdiagnosed his injury and persisted in a treatment she knew to be ineffective rather than referring him to a doctor.   His complaints against Dr. Santos are beyond the scope of this litigation.   He faults Krebs primarily for her responses to his grievances and for conduct beyond the scope of this litigation.

The defendants ask the Court to grant summary judgment on the grounds that no reasonable jury could conclude from the evidence in the record that the defendants were deliberately indifferent to Adams' admittedly serious medical need.

## III.   Analysis

The Eighth Amendment to the Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."   U.S. Const. amend. VIII.   The Eighth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment.   *See Robinson v. California*, 370 U.S. 660, 675 (1962).   The prohibition of cruel and unusual punishment forbids deliberate indifference to a prisoner's serious medical needs.   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014); *Zentmyer v. Kendall Co.*, 220 F.3d 805, 810 (7th Cir. 2000).   To prevail on such an Eighth Amendment claim, a prisoner must show (1) that he had an objectively serious medical need and (2) that the official knew that the medical need was serious but disregarded it.   *Pyles*, 771 F.3d at 409; *Zentmyer*, 220 F.3d at 810.

An objectively serious injury or medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th

Cir. 2006) (quotations omitted), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013); *accord Pyles*, 771 F.3d at 409.   A serious medical condition need not be life-threatening, but it should constitute "a denial of the minimal civilized measure of life's necessities." *Johnson*, 444 F.3d at 585 (quotations omitted).   No party disputes that Adams' injury presented a serious medical need.

An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson*, 444 F.3d at 585 ("The standard requires that an officer have 'subjective awareness' of the serious medical need and then act with indifference to that need.").   "Something more than negligence or even malpractice is required." *Pyles*, 771 F.3d at 409.   "Deliberate indifference can arise by a failure to provide prompt treatment for serious medical needs or by intentionally interfering with treatment once prescribed." *Chapman v. Keltner*, 241 F.3d 842, 845-46 (7th Cir. 2001) (citing *Estelle*, 429 U.S. at 104-05).   It can also arise where a treatment decision was "blatantly inappropriate." *Pyles*, 771 F.3d at 409 (internal quotations omitted; treatment that is "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment"); *see Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006) (treatment is "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment"); *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996) (treatment was a "substantial departure from accepted professional judgment, practice, or standards").   However, the prisoner must show that the defendant's conduct was intentional or criminally reckless; neither simple nor gross negligence is sufficient to establish deliberate indifference.   *Johnson*, 444 F.3d at 585; *Salazar v. City of Chicago*, 940 F.2d

6

233, 238 (7th Cir. 1991).

    A.    <u>Ingram</u>

No reasonable jury could find Ingram was deliberately indifferent to Adams' serious medical needs.   Every time he presented himself to the HCU because of his ankle, she examined him and provided treatment for his injury.   There is no evidence that her misdiagnosis of Adams' Achilles tendon injury as a sprain was deliberate indifference, that is, that she knew he had a more serious problem than a sprain and that she disregarded that more serious injury.   On the contrary, the evidence shows, at the most, that Ingram may have committed negligence or malpractice in her diagnosis, and that her treatment for what she honestly believed his condition to be – a sprained ankle – was not "blatantly inappropriate."

Furthermore, to the extent Adams accuses Ingram of continuing ineffective treatment, Adams' medical records reflect that, after initially seeing Adams on March 2, 2010, Ingram was under the impression that he was improving somewhat over the next six days.   On March 5, 2010, she noted in Adams' medical file that his swelling had gone from moderate to mild.   On March 8, 2010, she noted that Adams reported he still hurt "a little," and she herself observed no swelling, although Adams still had pain with movement and had trouble walking.   No evidence suggests that after Adams' March 8, 2010, visit to the HCU, Ingram knew the treatment she provided was ineffective.   No reasonable jury could find that, over the short time she was involved in Adams' treatment, Ingram was deliberately indifferent to Adams' medical needs by continuing to provide him treatment that she believed was helping somewhat and instructing him to return to the HCU as needed.

While it is unfortunate that Ingram did not recognize Adams required treatment from a

doctor and that this failure may have caused Adams' injury to become more complicated, there is simply no evidence from which a reasonable jury could find Ingram was deliberately indifferent to – that is, that she knew of and disregarded – Adams' serious medical needs.   Therefore, Ingram is entitled to summary judgment.

B.     Dr. Santos

No reasonable jury could find Dr. Santos was deliberately indifferent to Adams' serious medical needs.   Dr. Santos reviewed Ingram's initial report of her examination and treatment of Adams' injury and indicated he would see Adams as needed.   There is no way he could have known from that information that Adams' had anything more than a sprained ankle, much less, a ruptured Achilles tendon.   Ingram's report is all he knew about Adams' injury until April 12, 2010, when he examined Adams after a nurse referred him for a doctor visit.   At that point, Dr. Santos correctly diagnosed Adams with a ruptured Achilles tendon and immediately referred him to an orthopedic surgeon for the first available appointment.   When Dr. Ramon ordered surgery, Dr. Santos approved the recommendation.   This series of events does not suggest Dr. Santos disregarded Adams' need for treatment of his ankle injury.   On the contrary, Dr. Santos responded immediately once he became aware of the serious nature of Adams' injury through his personal examination.   Dr. Santos is entitled to summary judgment.

C.     Krebs

No reasonable jury could find Krebs was deliberately indifferent to Adams' serious medical needs because no evidence suggests she was personally involved in any of the events described above.   "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."   *Gentry v. Duckworth*, 65

F.3d 555, 561 (7th Cir. 1995); *accord Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006).   A defendant can only be liable if a plaintiff establishes that he, "through the official's own individual actions, has violated the Constitution."   *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).   "[E]ach Government official . . . is only liable for his or her own misconduct."   *Id.* at 677.

Adams makes scant reference to Krebs in his pleading.   He makes no allegations – and there is no evidence – that she was involved in his medical treatment.   Indeed, no evidence shows that she knew of the serious medical need posed by his ruptured Achilles tendon during his treatment by Ingram and Dr. Santos.   Adams did not grieve the matter until May 1, 2010, after his surgery and after the constitutional violation alleged in Adams' complaint was complete.   No evidence suggests Krebs knew about the matter before Adams' counselor sought a response from her to Adams' first grievance.   Furthermore, even if Krebs had known of Adams' serious medical need, as the HCU administrator, a non-medical position, she did not have the authority to overrule medical decisions made by medical personnel.   A defendant is generally not liable for the misdeeds of others simply because she may have known about them.   "A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference."   *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).   No reasonable jury could find Krebs was personally involved in Adams' treatment or was deliberately indifferent to his medical needs.

To the extent Adams faults Krebs for her role in denying his grievances, that does not amount to deliberate indifference.   A defendant who "rul[es] against a prisoner on an administrative complaint does not cause or contribute to the violation."   *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).   "Only persons who cause or participate in the violations are responsible."   *Id.*

9

To the extent Adams faults Krebs for not providing him copies of his medical records, that does not amount to deliberate indifference.   Aside from the fact that Adams has shown no serious medical risk from not having his medical records, Krebs is not responsible for providing inmates with those records.   When Adams requested his records from Krebs, she referred him to the appropriate office or official to provide them.   A reasonable jury simply could not find this was deliberate indifference to Adams' serious medical needs.

To the extent Adams faults Krebs for creating a policy that requires a nurse to serve as a gatekeeper for inmates to see a doctor, no evidence suggests Krebs was deliberately indifferent to the medical needs of inmates like Adams in instituting that policy.   The gatekeeper system allows inmates to receive nurse-level medical treatment on demand but reserves higher level treatment for cases that nurses, in their medical judgment, believe require more medical expertise.   No evidence suggests Krebs adopted this common triage practice was imposed as an exercise of deliberate indifference to inmate medical needs.

Because Adams has not provided evidence that Krebs was personally involved in any constitutional deprivation, she is entitled to summary judgment.

## IV.    Conclusion

For the foregoing reasons, the Court:

- **GRANTS** the motion for summary judgment filed by Dr. Santos and Ingram (Doc. 66);

- **GRANTS** the motion for summary judgment filed by Krebs (Doc. 71); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   March 17, 2015**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

10